**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

WILLIAM PURYEAR,

       Plaintiff,

  v.

KOLT WAYNE BARKER, individually and
f/d/b/a VAN BUREN AUTO SALES,

> *Serve: Kolt Wayne Barker*
> *28180 Denver Road*
> *Lebanon, Laclede County, Missouri*
> *65536-7663*

1-66 AUTO AUCTION, LLC,

> *Serve: CSC-Lawyers Incorporating*
> *Service Company*
> *221 Bolivar Street*
> *Jefferson City, Cole County,*
> *Missouri 65101*

ENCORE AUTO SALES, LLC,

> *Serve: Tom Klepper*
> *419 B East Kearney St.*
> *Springfield, Greene County, Missouri*
> *65803*

A. & S. AUTO, LLC,

> *Serve: Sheldon Patrick*
> *1603 Valley St.*
> *Joplin, Jasper County, Missouri*
> *64801-1869*

Case No. 6:25-cv-03368-WBG

**JURY TRIAL DEMANDED**

HEIGHTS FINANCE CORPORATION, a
foreign corporation,

> *Serve: CSC-Lawyers Incorporating*
> *Service Company*
> *221 Bolivar St.*
> *Jefferson City, Cole County, Missouri*
> *65101*

        Defendants.

## COMPLAINT

For his Complaint, Plaintiff William Puryear ("Puryear") states, alleges and avers as follows:

## SUMMARY OF CASE

All the auto dealer Defendants and Defendant 1-66 Auto Auction were involved in an odometer rollback scheme and/or participating in making false mileage statements regarding a truck sold to Plaintiff Puryear. Investigation has revealed that individuals and entities involved in the chain of title for the truck expressly misrepresented to downstream purchasers, including the Plaintiff, that the truck had approximately 138,000 miles when its actual mileage was over 300,000 miles, thereby violating federal and state law. This fraud has caused Plaintiff significant damages. Defendant Heights Finance's violations of FTC Holder Rule and its own misrepresentations as to Plaintiff's rights under the facts of this case have likewise caused and contributed to cause Plaintiff's damages.

## JURISDICTION

1.      Jurisdiction is vested in this Court pursuant to the federal odometer law, 49 U.S.C. §32701, the federal Magnuson-Moss Warranty Act, 15 U.S.C. §2310 (due to more than $50,000 in controversy including actual and punitive damages), and supplemental jurisdiction under 28 U.S.C. §1367 for Plaintiff's Missouri common law and statutory claims.

## ALLEGATIONS COMMON TO ALL COUNTS

2.      Plaintiff William Puryear ("Puryear") is an individual and resident of the State of Missouri.

3.      Defendant Kolt Wayne Barker, individually and formerly doing business as Van Buren Auto Sales (collectively "Van Buren") was a Missouri used car dealer. Upon information and belief, Van Buren was an experienced and sophisticated used motor vehicle dealership that held itself out as having knowledge and skill particular to used vehicles. Its principal place of business was located at 24175 Park Drive, Lebanon, Laclede County, Missouri 65536.

4.      Defendant 1-66 Auto Auction, LLC is a Missouri limited liability company that is an experienced and sophisticated automobile auction house. It holds itself out as having knowledge and skill particular to the sale of motor vehicles, and specifically as to the proper titling of motor vehicles. It regularly acts as an agent for car dealers in preparing and filling out motor vehicle titles after said vehicles are sold through its auction. Its principal place of business is located at 2944 West Sunshine Street, Springfield, Greene County, Missouri 65807.

5.      Defendant Encore Auto Sales, LLC ("Encore") is a Missouri used car dealer. Upon information and belief, Encore is an experienced and sophisticated used motor vehicle dealership. It holds itself out as having knowledge and skill particular to used motor vehicles. Its principal place of business is located at 419 East Kearney Street, #B, Springfield, Greene County, Missouri 65803.

6.      Defendant A. & S. Auto, LLC ("A&S") is a Missouri used car dealer. Upon information and belief, A&S is an experienced and sophisticated used motor vehicle dealership. It holds itself out as having knowledge and skill particular to used motor vehicles. Its principal place of business is located at 7060 Jaguar Road, Joplin, Jasper County, Missouri 64804.

3

7. Defendant Heights Finance Corporation ("Heights Finance") is a foreign corporation engaged in the financing of used motor vehicles. It holds itself out as having knowledge and skill particular to the financing of consumers' purchases of motor vehicles. Its principal place of business is located at 2640 East 32nd Street, Joplin, Jasper County, Missouri 64804. Its registered agent is CSC-Lawyers Incorporating Service Company, who can be served at 221 Bolivar Street, Jefferson City, Cole County, Missouri 65101.

8. This case involves Plaintiff Puryear's purchase of a 2013 Chevrolet Silverado Crew Cab 4x4 Pickup VIN 3GCPKSE71DG192055 ("the Chevy Truck") on or about April 21, 2023.

## DEFENDANT VAN BUREN'S PURCHASE OF THE CHEVY TRUCK FROM NON-PARTY LONDOFF CHEVROLET

9. On or about May 6, 2022, Johnny Londoff Chevrolet, Inc. of Florissant, Missouri sold the Chevy Truck to Defendant Van Buren with an Illinois Certificate of Title ("Illinois Title") for $6,531.00. A true and correct copy of the Chevy Truck's Illinois Title is attached hereto as Exhibit A and incorporated herein by reference.

10. The assignment from Londoff to Defendant Van Buren on the reverse side of the Illinois Title expressly states: "I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

☐ The mileage stated is in excess of its mechanical limits

☐ The odometer reading is not the actual mileage WARNING ODOMETER DISCREPANCY"

11. Neither box referenced above was checked and the actual mileage of 302,495 miles was filled in on the assignment to Defendant Van Buren. (Exhibit A).

4

12.    Kolt Wayne Barker (Van Buren) signed his name under the statement: "I am aware of the above odometer certification made by the seller/agent." (Exhibit A).

13.    On or about June 8, 2022, Defendant Van Buren obtained a Missouri Motor Vehicle Inspection ("Inspection") on which it was recorded that the Chevy Truck's actual mileage as 131,974 miles. A true and correct copy of the Inspection is attached as Exhibit B and incorporated herein by reference.

14.    Defendant Van Buren then applied for and obtained a Missouri Certificate of Title in its name but obtained the Missouri Title showing the Chevy Truck's mileage as 131,974 miles. A true and correct copy of the Van Buren Missouri Title is attached as Exhibit C and incorporated herein by reference.

## DEFENDANT VAN BUREN'S SALE OF THE CHEVY TRUCK THROUGH DEFENDANT 1-66 AUTO AUCTION TO DEFENDANT ENCORE

15.    On or about June 16, 2022, Defendant Van Buren sold the Chevy Truck to Defendant Encore through Defendant 1-66 Auto Auction in Springfield, Greene County, Missouri.

16.    Defendant 1-66 Auto Auction was at all relevant times acting as agent for Defendant Van Buren in connection with its sale of the Chevy Truck to Defendant Encore. At all relevant times, Emily Swope ("Swope"), Defendant 1-66 Auto Auction's employee, was acting as a dual agent for Defendants Van Buren and 1-66 Auto Auction.

17.    As part of its duties as agent for Defendant Van Buren, Defendant 1-66 Auto Auction, through its agent Swope prepared the "Assignment" on the reverse side of the Van Buren Missouri Title regarding the sale of the Chevy Truck to Defendant Encore, including the purchaser's name (Encore Auto Sales, LLC), its address, date of sale and the odometer reading of the Chevy Truck. (Exhibit C).

5

18.     Specifically, as to the odometer reading, Swope as dual agent for Defendant 1-66 Auto Auction and Defendant Van Buren, listed the odometer reading as 132,047 miles, even though Defendants Van Buren and 1-66 Auto Auction had actual knowledge that the listed odometer reading was false.

19.     Despite Defendant Van Buren's and Defendant 1-66 Auto Auction's actual knowledge that the 132,047 odometer reading was false, Swope, as dual agent for Defendants Van Buren and 1-66 Auto Auction, signed on behalf of the seller, Defendant Van Buren, the following express statement: "I state that the odometer now reads the aforementioned miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described herein, unless one of the following statements is checked:

☐  MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS

☐  MILEAGE READING IS NOT ACTUAL (WARNING-ODOMETER DISCREPANCY)"

20.     Neither statement above was checked by Swope in her capacity as dual agent for Defendants Van Buren and 1-66 Auto Auction. (Exhibit C).

21.     Defendants Van Buren and 1-66 Auto Auction knew that the odometer reading listed for the Chevy Truck and the lack of any check mark beside the statements referenced in paragraph 19 above, would be relied on by downstream buyers, like Plaintiff Puryear and others, when deciding whether to buy the Chevy Truck.

22.     Under Missouri common law, where a party like Defendant 1-66 Auto Auction engages in a common enterprise as it did in the instant case, it is liable for fraud and deceit committed by its customer, Defendant Van Buren, as set forth herein. Because it profited from the actions of Defendant Van Buren and retained benefits such as payment for its auction and

related services, Defendant 1-66 Auto Auction is a fraud-feasor under Missouri law. ***Payne v. Jenkins***, 593 S.W. 2d 519 (Mo. banc 1980).

23.     Under the Restatement (Second) Torts §533 (1977), "the maker of a fraudulent representation is liable to an individual when the make 'has reason to expect that [the misrepresentation's] terms will be repeated or its substance communicated to the other.'" ***Pelster v. Ray***, 987 F.2d 514, 523 (8th Cir. 1993).

24.     Both Defendants Van Buren and 1-66 Auto Auction knew and expected their misrepresentations about the Chevy Truck's mileage would be repeated to downstream consumers.

## <u>DEFENDANT ENCORE'S SALE OF THE CHEVY TRUCK TO AN INDIVIDUAL</u>

25.     In addition, the reverse side of the Van Buren Missouri Title shows that on or about August 8, 2022, in the "Reassignment by Registered Dealer" section, there was a sale of the Chevy Truck from Defendant Encore to an individual consumer buyer, Jordan Bridges ("Bridges") for $15,995. It lists the Chevy Truck's mileage as 132,073 miles and expressly states: "I state that the odometer now reads the aforementioned miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described herein, unless one of the following is checked:

☐   MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS

☐   MILEAGE READING IS NOT ACTUAL (WARNING-ODOMETER DISCREPANCY)"

26.     Neither statement was checked by Defendant Encore. (Exhibit C).

7

27.     On or about August 10, 2022, a Missouri Title was issued to Bridges. A true and correct copy of the Bridges Missouri Title is attached as Exhibit D and incorporated herein by reference.

28.     The reverse side of the Bridges Missouri Title shows an "Assignment" to Defendant A&S on or about November 30, 2022, and reflects an odometer reading of 137,892 miles.

## DEFENDANT A&S'S SALE OF THE CHEVROLET TRUCK TO PLAINTIFF PURYEAR

29.     On or about April 21, 2023, Plaintiff Puryear traveled to Defendant A&S's car dealership. A&S was offering the Chevy Truck for sale.

30.     Defendant A&S's asking price was $15,700 for the Chevy Truck.

31.     Defendant A&S expressly represented on that date that the Chevy Truck had 138,096 actual miles on it.

32.     Reasonably relying upon Defendant A&S's representations, Plaintiff Puryear agreed to purchase the Chevy Truck for personal, family or household use from Defendant A&S for $15,700. Plaintiff traded-in a Ford Escape for $6,900 and agreed to pay the $8,800 balance.

33.     In the section entitled: "Reassignment By Registered Dealer", on the Bridges Missouri Title, the Buyers are listed as Plaintiff Puryear and Shirley Campbell.[1] The Dealer is listed as Sheldon Patrick d/b/a Defendant A&S on or about April 21, 2023, and reflects an odometer reading of 138,096 miles and expressly states: "I state that the odometer now reads the aforementioned miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described herein, unless one of the following is checked

---

[1] Although Shirley Campbell is listed in the "Reassignment by Registered Dealer" as a purchaser, she is listed on the Chevy Truck's title as the Transfer on Death ("TOD") beneficiary, not as an owner. *See*, Puryear Missouri Title attached as Exhibit E and incorporated herein by reference.

☐ MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS

☐ MILEAGE READING IS NOT ACTUAL (WARNING-ODOMETER

DISCREPANCY)"

34.     Neither statement was checked by Defendant A&S. (Exhibit D).

35.     The same section lists April 21, 2023, as the sale date and confirmed the sales price of $15,700 (including trade-in of $6,900) and the balance of $8,800 paid by Plaintiff Puryear for the Chevy Truck.

36.     Consistent with its business arrangement with Defendant A&S, Defendant Heights Finance provided Plaintiff Puryear with a loan via a Promissory Note and Security Agreement ("Promissory Note") for the balance of $8,800.00 for the purchase of the Chevy Truck; $1,935.43 for add-on products of credit life and disability insurance; $100.00 for a prepaid finance charge (Origination Fee); and $6.00 for titling fees, for a total loan to Plaintiff Puryear of $11,333.76. A true and correct copy of the Promissory Note, as well as the credit life and disability insurance contracts are attached, marked as Exhibit F and incorporated herein by reference.

37.     Defendant Heights Finance's Promissory Note financed the $11,333.76 balance at 36.49% APR for 48 months, with the first payment of $616.42 and $472 for the remaining payments. (Exhibit E).

38.     The Promissory Note between Defendant Heights Finance and Plaintiff Puryear contains the following contractual language:

> **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.** The preceding notice applies only when the proceeds of this loan are

used to purchase goods or services for personal, family, or household use from a seller who (1) refers consumers to us, or (2) is affiliated with us by common control, contract, or business arrangement.

(Exhibit F).

39.     The above notice pursuant to 16 C.F.R. §433 *et. seq.* is fully known as the "Preservation of Consumers' Claims and Defenses" but is more commonly known as the "Federal Trade Commission ("FTC") Holder Rule" ("Holder Rule"). As the holder of the Note, Defendant Heights Finance "is subject to all claims and defenses which the debtor [Puryear] could assert against the seller [Defendant Sheldon Patrick, d/b/a A. & S. Auto] for goods and services…"

40.     An FTC advisory opinion states it "adopted the Rule to provide recourse to consumers who otherwise would be legally obligated to make a full payment to a creditor despite a ***breach of warranty, misrepresentation, or even fraud on the part of the seller***." (Emphasis added).[2]

41.     It also states: "that the creditor is ***always*** in a better position than the buyer to return the seller misconduct costs to sellers, the 'guilty party', and therefore concluded that [sellers] and creditors will be responsible for the seller misconduct". (Emphasis in original).[3]

42.     The FTC advisory opinion finds "…the plain language of the Rule permits a customer to assert a seller's misconduct (1) to defend against the creditor's lawsuit for amounts owed under the contract and/or (2) to maintain a claim against the creditor for a refund of money the consumer has already paid under the contract (*i. e.,* an affirmative recovery)."[4]

---

[2] May 3, 2012, Letter from FTC Secretary Donald Clark to the National Consumer Law Center (Exhibit G at p. 3).
[3] *Id.*
[4] *Id.* at p. 2.

43.     For the ease of the Court and the parties, the chart below summarizes the Chevy

Truck's title history:

| State | Seller | Buyer | Mileage | Purchase Date | Title Issue Date |
|-------|--------|-------|---------|---------------|------------------|
| IL | Unknown | James A. Sullivan | 19,500 | 01/10/2013 | 05/30/2014 |
| IL | James A. Sullivan | Johnny Londoff Chevrolet, Inc. | 302,495 | 05/06/2022 | 05/30/2014 |
| MO | Johnny Londoff Chevrolet, Inc. | Van Buren Auto Sales (Kolt Barker) | 302,495 | 05/06/2022 | 06/10/2022 |
| MO | E. Swope, Agent (D5346) | Encore Auto Sales, LLC | 132,047 | 06/16/2022 | 06/10/2022 |
| MO | Keith Miller, Agent (D6510) | Jordan Bridges | 132,073 | 08/08/2022 | 08/10/2022 |
| MO | Jordan Bridges | Sheldon Patrick, d/b/a A. & S. Auto | 137,892 | 11/30/2022 | 08/10/2022 |
| MO | Sheldon Patrick, d/b/a A. & S. Auto | William Puryear | 138,096 | 04/21/2023 | 05/03/2023 |

**AFTER DEFENDANT A&S'S SALE OF THE CHEVY TRUCK TO PLAINTIFF
PURYEAR**

44.     On or about September 17, 2025, Plaintiff Puryear became interested in trading

the Chevy Truck for another vehicle. His girlfriend, Shirley Campbell ("Campbell") drove the

Chevy Truck to a Ford dealership in Joplin, Missouri to see how much Plaintiff Puryear could

receive in trade for a different vehicle.

45.     As part of this dealership's evaluation process, a mechanic at the dealership

inspected the Chevy Truck and ran a Carfax report. He determined that the Chevy Truck had a

significant mileage discrepancy from what Defendant A&S represented to Plaintiff Puryear as

the actual mileage at the time he purchased it from Defendant A&S on August 23, 2023. The

mechanic indicated that due to the mileage discrepancy, the Chevy Truck had little, to no residual

value.

11

46.    This was the first time that Plaintiff Puryear learned that the vehicle's actual mileage as represented by Defendant A&S (and Defendants Van Buren, 1-66 Auto Auction and Encore) was false.

47.    The same day Campbell took the Chevy Truck to another auto dealership in Joplin, Missouri for an evaluation and it confirmed that the Chevy Truck was reported as having over 300,000 miles on it, when she and Plaintiff Puryear had been told it only had 138,096 miles at the time of their purchase from Defendant A&S.

48.    Upon learning about the false mileage representation, Plaintiff Puryear called Defendant Heights Finance to report what he and Campbell had learned on or about October 2, 2025.

49.    Plaintiff Puryear specifically spoke to Defendant Heights Finance's Manager "Shelby".

50.    Plaintiff Puryear explained that he was a victim of odometer fraud. Shelby claimed not to know what odometer fraud is. After explaining it to Shelby, Plaintiff Puryear asked if he needed to make a payment. Shelby replied that the odometer problem "doesn't have anything to do with [Defendant Heights Finance]". "We're just the finance company using it as collateral. But as far as the odometer, that's not our department. We don't do anything with that."

51.    Several days later, Campbell dropped off paperwork showing the Chevy Truck's odometer fraud issue. On or about October 30, 2025, Plaintiff Puryear called Shelby at Defendant Heights Finance for a second time. Shelby claimed that she had looked through the paperwork but said: "I'm not 100% sure why you brought it to me." Plaintiff Puryear explained that he wanted to show her that he was a victim of odometer fraud. Shelby replied: "I 100% believe you and I did look through it and I do see what you're talking about. There is nothing I

can do about it on my end, since all we are is the finance company. We don't have anything to do with the car. So, if that is something you are concerned about, you have to reach out to the dealership you bought it from. Because we did give you the money, like, to finance the car per se, we gave you the money and we're using the car as collateral, but as far as anything when it comes to that, you'll reach out to the dealership because we don't do anything with the car. The only thing I have is a picture of the odometer that we took the day you closed the loan. I've got the title we filled out and the odometer and the original pictures. But as far as everything else, you would have to reach out to the dealership, because we don't have anything to do with that."

52.     Shelby's (Heights Finance's) statements were false, contrary to the Holder Rule and Missouri law as referenced above and below.

53.     On or about October 31, 2025, Campbell reported to Sheldon Patrick ("Patrick"), the principal of Defendant A&S, that she and Puryear had learned that the Chevy Truck had over 300,000 actual miles on it versus what Defendant A&S represented as the actual mileage.

54.     Patrick disclaimed any knowledge claiming he had mechanics do a bunch of engine work on it and that they never "said anything about high miles or anything". Patrick and A&S refused to do anything for Plaintiff Puryear about the Chevy Truck.

## COUNT I – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S-FRAUDULENT MISREPRESENTATIONS AND NON-DISCLOSURES

55.     Plaintiff Puryear incorporates the above allegations as though fully set forth herein.

56.     Defendants Van Buren, 1-66 Auto Auction, and Encore foresaw, expected and intended that a dealer like Defendant A&S would communicate the incorrect mileage description to unsuspecting consumers like Plaintiff Puryear, for him to rely on when purchasing the Chevy Truck.

13

57.     Defendants Van Buren's, 1-66 Auto Auction's and Encore's descriptions, representations and warranty regarding the actual mileage of the Chevy Truck were false.

58.     Defendants Van Buren, 1-66 Auto Auction and Encore knew or should have known that their representations about the Chevy Truck's actual mileage were false at the time they were made, or they made the representations without knowing whether they were true or false.

59.     The representations (orally and in writing) about the actual mileage of the Chevy Truck were passed along to Plaintiff Puryear by Defendant A&S and were material to Plaintiff Puryear's purchase of the Chevy Truck. Had Plaintiff Puryear known the representations were false, he would not have purchased the Chevy Truck.

60.     Defendants Van Buren, 1-66 Auto Auction, Encore and/or A&S had superior knowledge about the Chevy Truck's mileage being inaccurate and it was not within the fair and reasonable reach of Plaintiff Puryear. As a result, Defendants Van Buren and Encore had a duty to disclose the mileage inaccuracy to consumer Bridges and other dealers like Defendant A&S. Likewise, Defendant A&S had a duty to discover and disclose the mileage inaccuracy to Plaintiff Puryear.

61.     Plaintiff Puryear reasonably relied on Defendant A&S's repeating of the false representations of Defendants Van Buren, 1-66 Auto Auction and Encore as passed along to him as alleged when purchasing the Chevy Truck.

62.     Defendants Van Buren, 1-66 Auto Auction and Encore should not be able to reap profits by aiding other car dealers, like Defendant A&S, in committing fraud.

63.     As a direct and proximate result of Defendants Van Buren's, 1-66 Auto Auction's, Encore's and/or A&S's fraud, Plaintiff Puryear sustained actual damages, including the loss of

14

his trade-in; interest; the cost of credit life and disability insurance; automobile insurance premiums; sales property taxes; titling fees; maintenance costs; titling and license fees; property taxes; inconvenience and labor expended in investigating the Chevy Truck's title history in attempting to recoup some or all of their actual losses; as well as use of the Chevy Truck and the value of alternative transportation to cover for the loss of the Chevy Truck after discovery of the mileage fraud due to Plaintiff Puryear being afraid and unwilling to drive it because of safety issues posed by the Chevy Truck having well over 300,000 miles on it.

64.     Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's false mileage representations as alleged were intentional, willful, wanton and malicious, and done with evil motive and reckless disregard for the rights and safety of Plaintiff Puryear and others, thereby entitling Plaintiff Puryear to as assessment of more than $100,000 in punitive damages to punish and deter Defendants Van Buren, 1-66 Auto Auction, Encore and/or A&S and others from like conduct.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count I of this Complaint against Defendants Van Buren, 1-66 Auto Auction, Encore and/or A&S for his actual damages, for an assessment of punitive damages of more than $100,000, for his costs incurred and for any other relief to which he is entitled.

## COUNT II – DEFENDANT HEIGHTS FINANCE-FRAUDULENT MISREPRESENTATIONS AND NON-DISCLOSURES

65.     Plaintiff Puryear incorporates by reference all the above allegations as though fully set forth herein.

66.     Pursuant to the Holder Rule, per the language set forth above, and pursuant to Missouri's UCC §400.2-201 RSMo., Defendant Heights Finance, as the holder/assignee of the Promissory Note, is subject to all claims and defenses Plaintiff Puryear has against Defendant

A&S for amounts Plaintiff Puryear has paid and continues to pay under the Promissory Note and other items of damage.

67. Defendant Heights Finance is also liable for its own direct misrepresentations referenced above, including but not limited to its false representations about its obligations under the Holder Rule, its non-disclosure of Plaintiff Puryear's right to revoke his acceptance of the Chevy Truck under §400.2-711 RSMo. and/or its failure and refusal to cancel or revoke Plaintiff Puryear's Promissory Note per §400.2-608 RSMo.

68. Defendant Heights Finance's knowledge of the aforementioned facts was superior to that of Plaintiff Puryear, and such knowledge was not within his fair and reasonable reach, so that Plaintiff Heights Finance had a duty to disclose these facts to Plaintiff Puryear.

69. Defendant Heights Finance breach its duty to Plaintiff Puryear, intending that Plaintiff Puryear rely on such misrepresentations and non-disclosures in continuing to make payments on the Promissory Note to Defendant Heights Finance, while Defendant Heights Finance knew its misrepresentations were false or while not knowing whether they were true or false. In addition, it knew its non-disclosures were material to Plaintiff Puryear's continuing to make payments.

70. Plaintiff Puryear did not know these material facts and reasonably relied on Defendant Heights Finance's misrepresentations and non-disclosures in making continuing payments on the Promissory note.

71. As a direct and proximate result of Defendant Heights Finance's non-disclosures and fraudulent misrepresentations, Plaintiff Puryear sustained the actual damages alleged above.

72. Defendant Heights Finance's non-disclosures and fraudulent misrepresentations were intentional, willful, wanton and malicious, done with evil motive or reckless disregard to

the rights of Plaintiff Puryear and others, thereby entitling Plaintiff Puryear to an additional assessment of punitive damages in an amount more than $100,000 to punish and deter Defendant Heights Finance and others from like conduct.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count II of this Complaint against Defendant Heights Finance for his actual damages, for an assessment of punitive damages against Defendant Heights Finance of more than $100,000, for costs incurred and for any other relief to which he is entitled.

## COUNT III – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S- VIOLATIONS OF FEDERAL ODOMETER LAW

73.    Plaintiff Puryear incorporates by reference the above allegations as though fully set forth herein.

74.    Defendants Van Buren, 1-66 Auto Auction, Encore and A&S knew that their written representations about the Chevy Truck's odometer reading, title history and condition would be repeated to downstream consumers, like Plaintiff Puryear.

75.    Defendants Van Buren's, 1-66 Auto Auction's, Encore's and/or A&S's conduct in rolling back the Chevy Truck's odometer and/or participating in making false mileage statements concerning the Chevy Truck and/or conspiring with others to falsify the Chevy Truck's odometer statements on the various Missouri Titles referenced herein, constituted violations of 49 U.S.C. §§ 32703 and 32705 and regulations for the enforcement of Federal odometer statutes at 49 C.F.R.§ 580.1 *et. seq.*[5]

---

[5] The federal odometer statutes were formerly numbered from Title 15 U.S.C. §§ 1981 through 1991; they were "codified" - re-enacted with changes in wording to conform to new standardized style requirements but expressly without any change in the substance of the laws - in 1994, and now are found at Title 49 U.S.C. §§ 32701 through 32711.

76. Federal odometer law imposes an affirmative duty on all automobile dealers to discover mileage defects.

77. Under Federal odometer law, transferees like Plaintiff Puryear can prove intent to defraud by showing that transferors like Defendants Van Buren, 1-66 Auto Auction, Encore and A&S had actual knowledge, exhibited gross negligence or reckless disregard for the truth in preparing odometer disclosure statements or lacked actual knowledge of a false odometer reading by closing their eyes to the truth.

78. As a direct and proximate result of these violations of law, Plaintiff Puryear suffered actual damages in excess of $40,000 as alleged above.

79. The conduct of Defendants Van Buren, 1-66 Auto Auction, Encore and A&S was with the intent to defraud, so that pursuant to 49 C.F.R. §578.6(f)(2), Plaintiff Puryear is entitled to three times his actual damages or $13,676.00, whichever is greater, against **each** of the Defendants, plus attorneys' fees and costs.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count III of this Complaint for a separate assessment of damages against Defendants Van Buren, 1-66 Auto Auction, Encore and A&S for more than $120,000 in statutory damages, for reasonable attorneys' fees, for his costs incurred and for any other relief to which he is entitled.

## COUNT IV – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE, A&S AND HEIGHTS FINANCE-VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

80. Plaintiff Puryear incorporates the above allegations as though fully set forth herein.

81. Under the Missouri Merchandising Practices Act ("MMPA"), "[A]ny act, use, or employment declared unlawful by this subsection violates this subsection whether committed

before, during or after the sale, advertisement or solicitation." §407.020.1 RSMo. *See, **Conway v. CitiMortgage, Inc.**, 438 S.W. 3d 410, 415 (Mo. banc 2014).

82.     Under the MMPA, "merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate or services." §407.010 (4) RSMo. The Chevy Truck and the financing and servicing of its purchase are "merchandise" under the MMPA.

83.     Under the MMP, "person", includes "a natural person", "for-profit corporation", "agent" or "employee". §407.010(5) RSMo. All the Defendants meet this definition.

84.     Under the MMPA, "sale" includes a "sale, lease…or attempt to sell or lease for cash or credit." §407.010(6) RSMo. The sale of the Chevy truck and its financing are "sales" under the MMPA.

85.     Under the MMPA, "the act, use or employment by any person of any of any deception, fraud, false promise, misrepresentation, unfair practice, or the concealment, suppression or omission of any material fact in connection with the sale…of any merchandise in trade or commerce…is declared to be an unlawful practice." §407.020.1 RSMo.

86.     The Missouri Attorney General's interpretative regulations for the MMPA have the full force of law.

87.     Under 15 CSR 60-9.040 (1)(1): "Fraud [under the MMPA] includes any acts, omissions or artifices which involve falsehood, deception, trickery, breach of a legal or equitable duty, trust or confidence, and are injurious to another or which an undue or unconscious advantage over another is obtained."

88.     Under 15 CSR 60-9.0404(2)(2): "Fraud, as used [under the MMPA] is not limited to common law fraud or deceit and is not limited to finite rules but extends to the infinite variations of human invention." (Internal citations omitted).

89.     Unlike common law fraud, Plaintiff Puryear does not have to show his reliance for a Defendant to be liable for fraud under the MMPA. *See,* **Hess v. Chass Manhattan Bank, USA**, 200 S.W. 3d 758, 774 (Mo. banc 2007).

90.     A Defendant's intent is likewise irrelevant to a determination of whether it violated the MMPA. *See,* **State ex. rel. Webster v. Areaco Inv. Co.**, 756 S.W.2d 633, 635 (Mo. App. 1998).

91.     Under the MMPA, §407.025 RSMo., Plaintiff Puryear is entitled to recover his actual and ascertainable damages, as well as reasonable attorneys' fees, costs, punitive damages and equitable relief.

92.     Defendants Van Buren, 1-66 Auto Auction, Encore, and/or A&S have violated the MMPA (directly and indirectly) in one or more of the following manners:

    a.   By rolling back the Chevy Truck's odometer;

    b.   By making false written representations about the Chevy Truck's actual mileage;

    c.   By failing to advise Plaintiff Puryear that the mileage shown on the odometer of the Chevy Truck was inaccurate; and/or

    d.   By violating Federal odometer law.

93.     Defendant Heights Finance violated and continues to violate the MMPA (directly or indirectly) in one or more of the following manners:

    a.   By falsely representing its obligations under the Holder Rule;

    b.   In falsely representing to Plaintiff Puryear that he had to continue making payments on the Promissory Note after it learned that the Plaintiff Puryear

20

was the victim of odometer fraud in connection with the purchase of the

Chevy Truck;

    c.   By falsely and misleadingly indicating to Plaintiff Puryear that it could not

cancel or revoke the Promissory Note;

    d.   By falsely and misleadingly indicating that it had no legal responsibility for

Defendant A& S's fraud;

    e.   By failing and refusing to cancel or revoke the Promissory Note;

    f.   By failing and refusing to return all of Plaintiff Puryear's payments and

interest under the Promissory Note, including but not limited to the value of

his trade-in; and

    g.   By failing to immediately release its lien on the Chevy Truck's Missouri title

issued to Plaintiff Puryear.

94.    The Defendants' various violations of the MMPA as alleged herein, directly caused or contributed to cause Plaintiff Puryear's actual and ascertainable damages as alleged herein.

95.    The Defendants have engaged various patterns and practices violating the rights of consumers across the state, including Plaintiff Puryear, by violating the MMPA, Missouri statutory and common law and the Holder Rule in the same or similar manners as alleged herein.

96.    Due to the conduct of the various Defendants as alleged herein, Plaintiff Puryear is entitled to equitable relief under the MMPA in the form of an order directing Defendant Heights Finance to cancel and revoke his Promissory Note and to cancel its lien on Plaintiff Puryear's Missouri Title for the Chevy Truck.

97.     Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's violations of the MMPA were intentional, willful, wanton and malicious, done with evil motive or reckless disregard for the safety and rights of Plaintiff Puryear and others, thereby entitling Plaintiff to an additional assessment of punitive damages for more than $100,000 to punish and deter each of the Defendants and others from like conduct.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count IV of this Complaint against each of the Defendants, jointly and severally, for Plaintiff's actual and ascertainable damages, for attorneys' fees, for his costs incurred, for an assessment of punitive damages of more than $100,000, for equitable relief and for any other relief to which he is entitled.

### COUNT V – DEFENDANT A&S–NEGLIGENCE

98.     Plaintiff Puryear incorporates by reference the above allegations as though fully set forth herein.

99.     Defendant A&S owed a duty of ordinary care to Plaintiff Puryear to protect Plaintiff Puryear from unreasonable risks of harm related to his purchase of the Chevy Truck.

100.     Defendant A&S breached that duty and was negligent in one or more of the following manners:

    a.  In failing to properly investigate and verify its representations and documentation about the Chevy Truck's actual mileage;

    b.  In failing to properly inspect the Chevy Truck to discover its true mileage;

    c.  In failing to retain qualified personnel to conduct vehicle inspections for the detection of mileage discrepancies or to train personnel to conduct such inspections;

d. In failing to properly train someone to conduct proper inspections of the vehicles they offer for sale; and

e. In failing to correct its misrepresentations about the Chevy Truck's odometer reading when it knew, or should have known such misrepresentations were made.

101. As a result of Defendant A&S's negligence, Plaintiff Puryear was damaged as alleged above.

102. The conduct of Defendant A&S was willful, wanton and done in reckless disregard to the rights and safety of Plaintiff Puryear, thereby entitling him to an additional assessment of punitive damages of more than $100,000 to punish Defendant A&S and to deter others from like conduct.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count V of this Complaint against Defendant A&S, for his actual damages, for an additional assessment of punitive damages of more than $100,000, for his costs incurred and for any other relief to which he is entitled.

## COUNT VI – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S-BREACHES OF IMPLIED WARRANTY OF TITLE

103. Plaintiff Puryear incorporates the above allegations as though fully set forth herein.

104. This claim is brought pursuant to Missouri's Uniform Commercial Code ("UCC") §400.2-312 RSMo.

105. Defendants Van Buren, 1-66 Auto Auction, Encore and A&S are merchants as defined by §400.2-104 RSMo.

23

106.     Defendants Van Buren, 1-66 Auto Auction, Encore and A&S are also merchants in goods of the kind at issue in this case, *i.e.*, motor vehicles.

107.     Defendants Van Buren, 1-66 Auto Auction, Encore and/or A&S breached §400.2-312(1)(a) and (b) RSMo. in that their respective transfers of title are encumbered by incorrect statements of the Chevy Truck's actual mileage of which Plaintiff Puryear had no knowledge.

108.     Plaintiff Puryear relied on the representations, superior knowledge, skill and judgment of Defendants Van Buren, 1-66 Auto Auction, Encore and/or A&S in purchasing the Chevy Truck.

109.     As a direct and proximate result of the breaches of this warranty implied by law, Plaintiff Puryear suffered the damages as alleged herein.

110.     The aforementioned concealments and misrepresentations by Defendants Van Buren, 1-66 Auto Auction, Encore and A&S were material to Plaintiff Puryear's decision to purchase the Chevy Truck, in that Plaintiff Puryear would not have purchased the Chevy Truck without said concealments and misrepresentations.

111.     Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's breaches as alleged arises to the level of an independent tort, so that one or all of the Defendants are subject to punitive damages on this Count.

112.     Defendants Van Buren's, 1-66 Auto Auctions, Encore's and A&S's aforementioned acts or omissions were intentional, willful, wanton and malicious, done with evil motive or reckless disregard for the safety and rights of Plaintiff Puryear and others, thereby entitling Plaintiff Puryear to an additional assessment of punitive damages for more than $100,000, for his costs incurred and for any other relief to which he is entitled.

24

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count VI of this Complaint, jointly and severally, against Defendants Van Buren, 1-66 Auto Auction, Encore and/or A&S for his actual damages, for punitive damages of more than $100,000, for his costs incurred and for any other relief to which he is entitled.

## COUNT VII – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S– BREACHES OF IMPLIED WARRANTY OF MERCHANTABILITY BY DESCRIPTION

113.     Plaintiff Puryear incorporates the above allegations as though fully set forth herein.

114.     This claim is brought pursuant to Missouri's UCC § 400.2-314(2)(a).

115.     The Chevy Truck, when sold by Defendants Van Buren, 1-66 Auto Auction, Encore and A&S, would not have passed without objection in the trade under its description if its actual mileage would have been disclosed as required by federal and state law.

116.     As a direct and proximate result of the breaches of this implied warranty, Plaintiff Puryear suffered damages as alleged herein.

117.     It was exactly the purpose of federal and state statutorily-required contract descriptions, promises or affirmations of fact, representations and warranties as alleged, that they be directed toward and for the protection of downstream purchasers like Plaintiff Puryear; they were not for the protection of the dealer purchasers of the Chevy Truck.

118.     Defendants Van Buren's 1-66 Auto Auction's, Encore's and A&S's breaches as alleged rises to the level of an indpendent tort, as previously alleged, so that said Defendants are subject to a claim for puntive damages on this Count.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count VII of this Complaint, jointly and severally, against Defendants Van Buren, 1-66 Auto Auction, Encore and A&S for his

actual damages, for an assessment of punitive damages of more than $100,000, for his costs incurred and for any other relief to which he is entitled.

## <u>COUNT VIII – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S-BREACHES OF IMPLIED WARRANTY OF MERCHANTABILITY FOR ORDINARY PURPOSES</u>

119.    Plaintiff Puryear incorporates by reference all the above allegations as though fully set forth herein.

120.    This claim is brought pursuant to Missouri's UCC § 400.2-314(2)(c).

121.    The Chevy Truck, when sold by Defendants Van Buren, 1-66 Auto Auction, Encore and A&S was not fit for the ordinary purposes for which such goods, with titles, containing the actual mileage are sold.

122.    As a direct and proximate result of the breaches of this implied warranty, Plaintiff Puryear suffered damages as alleged herein.

123.    Defendants Van Buren's, 1-66 Auto Auction's, Encore and A&S's breaches as alleged rises to the level of an independent tort, as previously alleged, so that said Defendants are subject to a claim for punitive damges on this Count.

124.    Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's breaches were intentional, willful, wanton and malicious, done with evil motive and reckless disregard to the safety and rights of Plaintiff Puryear, thereby entitling Plaintiff to an additional assessment of punitive damages of more than $100,000 to punish and deter said Defendants and others from like conduct.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count VIII of this Complaint, jointly and severally, against Defendants Van Buren, 1-66 Auto Auction, Encore and A&S for his

actual damages, for punitive damages of more than $100,000, for his costs incurred and for any other relief to which he is entitled.

## COUNT IX – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S– BREACHES OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

125.    Plaintiff Puryear incorporates the above allegations as though fully set forth herein.

126.    This claim is brought pursuant to Missouri's UCC § 400.2-315.

127.    When the Chevy Truck was sold by Defendants Van Buren, 1-66 Auto Auction, Encore and A&S, they had reason to know of the particular purpose for which it was required, which was legal and not illegal transfer, then registration and use on the highways, and they had reason to know that the buyer, ultimately Plaintiff, was relying on their skill, superior knowledge or judgment to furnish suitable goods.

128.    As a direct and proximate result of the breaches of this implied warranty, Plaintiff Puryear suffered damages as alleged herein.

129.    Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's breaches as alleged rises to the level of an independent tort, as previously alleged, so that said Defendants are subject to a claim for punitive damages on this Count.

130.    Defendants Van Buren's, 1-66 Auto Auctions, Encore's and A&S's breaches were intentional, willful, wanton and malicious, and done with evil motive and in reckless disregard to the rights and safety of Plaintiff Puryear, thereby entitling Plaintiff to an additional assessment of punitive damages of more than $100,000 to punish and deter said Defendants and others from like conduct.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count IX of this Complaint, jointly and severally, against Defendants Van Buren, 1-66 Auto Auction, Encore and A&S for his

27

actual damages, punitive damages of more than $100,000, for his costs incurred and for any other relief to which he is entitled.

## <u>COUNT X – DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S-BREACHES OF EXPRESS WARRANTY</u>

131.     Plaintiff Puryear incorporates the above allegations as though fully set forth herein.

132.     This claim is brought pursuant to Missouri's UCC § 400.2-313.

133.     The Chevy Truck, when sold by Defendants Van Buren, 1-66 Auto Auction, Encore and A&S, did not in fact conform to the affirmations of fact regarding actual mileage of the Chevy Truck as alleged that were made by said Defendants that became part of the basis of the bargains in their sales.

134.     As a direct and proximate result of the breaches of these express warranties, Plaintiff Puryear suffered the damages as alleged herein.

135.     It was exactly the purpose of statutorily-required contract descriptions, warranty and affirmations of fact, that they were directed toward and were for the protection of downstream purchasers like Plaintiff Puryear; they were not for the protection of the dealer purchasers of the Chevy Truck.

136.     Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's breaches as alleged rises to the level of an independent tort, as previously alleged, so that said Defendants are subject to a claim for punitive damages on this Count.

137.     Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's breaches were intentional, willful, wanton and malicious, and done with evil motive and reckless disregard to the safety and rights of Plaintiff Puryear, thereby entitling Plaintiff to an additional assessment of more than $100,000 to punish and deter said Defendants and others from like conduct

28

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count X of this Complaint jointly and severally against Defendants Van Buren, 1-66 Auto Auction, Encore and A&S for actual damages, for puntive damages of more than $100,000, for his costs incurred and for any other relief to which he is entitled.

## COUNT XI - DEFENDANTS VAN BUREN, 1-66 AUTO AUCTION, ENCORE AND A&S-VIOLATIONS OF THE FEDERAL MAGNUSON-MOSS CONSUMER WARRANTY ACT

138.    Plaintiff Puryear incorporates the above allegations as set forth fully herein.

139.    These claims are brought pursuant to Title 15 USC § 2310(d).

140.    The Chevy Truck is a "consumer product" within the meaning of Title 15 USC § 2301(1).

141.    The violations by Defendants Van Buren, 1-66 Auto Auction, Encore and A&S of implied warranties as alleged in the preceding four Counts give Plaintiff Puryear claims against said Defendants under Title 15 USC § 2310(d) for actual damages, attorneys' fees and costs.

142.    An "implied warranty" is "any implied warranty arising under State law…" 15 U.S.C. §2301(7).

143.    A "written warranty" is "(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product which relates to the nature of the material and workmanship and affrims or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, …".

144.    As a direct and proximate result of the breaches of the Missouri implied warranties as alleged, Plaintiff Puryear suffered damages as alleged herein.

145.    The conduct of Defendants Van Buren, 1-666 Auto Auction, Encore and A&S as alleged in the preceding breach of express and implied warranty counts breaches affirmations of

29

fact that relate to the nature of the Chevy Truck and promises that it is defect free in that it is an ordinary vehicle on which its title reflects it has far less than 300,000 miles, and so constitutes breaches of a written warranty.

146.    Defendants Van Buren's, 1-66 Auto Auction's, Encore's and A&S's breaches rise to the level of independent tort, as previously alleged, so that said Defendants are subject to a claim for punitive damages on this Count.

147.    Defendants Van Buren's 1-66 Auto Auction's, Encore's and A&S's breaches were willful, wanton and malicious, done with evil motive and reckless disregard for the rights and safety of Plaintiff Puryear and others, thereby entitling Plaintiff Puryear to an additional assessment of punitive damages of more than $100,000 to deter said Defendants and others from like conduct.

**WHEREFORE**, Plaintiff Puryear prays for judgment on Count XI of this Complaint, jointly and severally, against Defendants Van Buren, 1-66 Auto Auction, Encore and A&S for his actual damages, for punitive damages of more than $100,000, for attorneys' fees, for his costs incurred and for any other relief to which to which he is entitled.

**ALESHIRE ROBB & RAPP**

By  */s/ Gregory W. Aleshire*
      Gregory W. Aleshire          MO #38691
      William R. Robb               MO #43322
      Kevin J. Rapp          MO #57974
      2847 Ingram Mill Road, A-102
      Springfield, MO 65804
      417.869.3737 PHONE
      417.869.5678 FAX
      *info@aleshirerobb.com*
      **ATTORNEYS FOR PLAINTIFF**